608 A.2d 648

**ROOSEVELT ARMS, INC., Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 3, 1992.

Decided April 29, 1992.

David J. Lehman, for petitioner.

Kevin A. Moury, Deputy Atty. Gen., for respondent.

Before COLINS and PELLEGRINI, JJ., and BARRY, Senior Judge.

PELLEGRINI, Judge.

Roosevelt Arms, Inc. (Taxpayer) petitions this court to review an order of the Board of Finance and Revenue (Board) which denied its Petition for Refund in which Taxpayer sought a refund of the Pennsylvania Corporate Net Income Tax (CNI tax) and interest on that tax which it paid for its fiscal year ended June 30, 1982.

Taxpayer is a Delaware corporation qualified to do business in Pennsylvania and is in the business of investments and real estate. Taxpayer timely filed its Pennsylvania Corporate Tax Report (1982 Return) for the tax year beginning on July 1, 1981, and ended June 30, 1982. On its 1982 Return, Taxpayer indicated that its income was $93,684.74 before adjustments and $121,729.74 after adjustments. Taxpayer also indicated on that return that it was allowed a tax preference, referred to as a "Special Deduction", for depreciation on low-income housing in the amount of $204,-067, less $3,046 which was the current year's tax preference

for real property, totalling $201,021 for tax preference items. Consequently, Taxpayer indicated on the 1982 Return that no tax was owed to the Commonwealth for fiscal year ended June 30, 1982, because it had suffered a loss in the amount of $79,291.26.[1]

Based upon its interpretation of 61 Pa.Code § 153.14(4), the Department of Revenue (Department), through the Bureau of Examination's recomputation of Taxpayer's corporate net income, disallowed the Special Deduction taken by the Taxpayer. Through its computation, the Department concluded that Taxpayer had taxable income for fiscal year ended June 30, 1982, in the amount of $124,775.74. Based on that fiscal year's taxable income, the Department settled and assessed a CNI tax against Taxpayer in the amount of $13,101 for the year ended June 30, 1982. Taxpayer paid the CNI tax on September 5, 1984, and interest due in the amount of $3,637.

Taxpayer filed a Petition for Refund with the Board in which it sought a refund of the CNI tax and the interest it had paid for the year ended June 30, 1982. In its Petition, Taxpayer stated that its Special Deduction of $204,067 in the 1982 Return represented tax preference depreciation which fit within the deductibility requirements of 61 Pa. Code § 153.14. Subsequently, Taxpayer sent a letter to the Board supplementing its Petition to indicate that the correct Special Deduction for the 1982 Return was $195,931.[2] On November 19, 1985, the Board refused Taxpayer's Petition. Taxpayer then filed with this court a Petition for Review of

1.

| Income after adjustments | $121,729.74 |
|---|---|
| Tax preference items | −201,021.00 |
| Loss for tax year 1982 | ($ 79,291.26) |

2. Taxpayer explained in the letter that this depreciation difference arose because Internal Revenue Code Section 167(k) depreciation was taken for Federal income tax purposes. Taxpayer further explained that this five year depreciation method, relating to the depreciation of certain building improvements for low-income individuals over a five-year period, resulted in a tax preference which was not allowed for Pennsylvania tax purposes.

a Determination of the Board of Finance and Review which is heard *de novo*. The parties have filed stipulated findings of fact which we adopt as our own.

A Special Deduction for CNI tax purposes is allowed to a taxpayer who owns IRC Section 1250 property[3] due to the property's construction or inclusion in federal low-income housing programs. While Taxpayer can take full accelerated depreciation for Federal tax purposes, under Section 401 of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7401(3)(1)(d)(iii), Taxpayer must add accelerated depreciation into its taxable income, thus, in effect, requiring Taxpayer to take straight line depreciation for state tax purposes.

Applying that provision of the Tax Reform Code of 1971 to the Pennsylvania CNI tax regulations regarding when deductions can be taken for depreciation of property, 61 Pa.Code § 153.14(4) provides the following:

(i) A taxpayer depreciating section 1250 of the IRC property on an accelerated basis is permitted a special deduction to taxable income to be apportioned when the accelerated depreciation falls below straight line depreciation. The amount of the deduction for a tax year is limited to the amount of depreciation below straight line. The aggregate adjustment to taxable income to be apportioned for amounts below straight line may not exceed the aggregate of the amount added to *taxable income to be apportioned in previous tax years*. (Emphasis added.)

(iii) The special deduction described in subparagraph (i) will not be permitted for a tax year where the taxpayer did not have income to be apportioned.[4]

3. Section 1250 of the Internal Revenue Code of 1986, *as amended*, 26 U.S.C.A. § 1250.

4. 61 Pa.Code § 153.11 defines "taxable income" as follows:
[T]he term "taxable income" means "Federal taxable income before net operating loss deduction and special deductions" (presently Line 28 of Page 1 of Federal IRS Form 1120 or Line 24 of Page 1 of Federal IRS Form 1120–A) as returned to and ascertained by the Federal government and as modified or adjusted under section

Under this regulation, the Special Deduction is calculated by first determining the accelerated depreciation and then the straight line depreciation of section 1250 of the IRC property for the tax year in which a taxpayer is filing a Pennsylvania CNI tax return. If the amount of the accelerated depreciation is less than the amount of the straight line depreciation, the difference in those amounts is the amount which may be deducted on the CNI tax form, providing that the amount does not exceed the amount added to taxable income to be apportioned in previous years, and the taxpayer has income to be apportioned in the tax year in which the deduction is to be taken. The net effect then is if Taxpayer suffers no tax detriment in the earlier years as a result of being forced to use straight line depreciation by paying tax on income which would have been non-existent or less if accelerated depreciation was utilized, Taxpayer does not get the aggregate adjustment in later years, bringing the deduction up to the straight line amount.

Neither the Taxpayer nor the Board dispute that Taxpayer has accelerated depreciation in tax year 1982 which falls below straight line depreciation or that Taxpayer has taxable income to be apportioned in the current tax year. What is in dispute between the parties is whether Taxpayer had taxable income in previous tax years within the meaning of the regulation. Taxpayer contends that it had "negative income", and nowhere in the regulation is it required that Taxpayer have positive taxable income. The Board conversely contends that taxable income means that Taxpayer generated a profit and not a loss for those years. The Board refers us to the record which reflects that Taxpayer's CNI tax returns for tax years 1977–1981 reported a loss, and no CNI tax was assessed and paid for those years.[5] Necessarily then, the issue we must decide is

401(3)1. of the Tax Reform Code (72 P.S. § 7401(3)1.) and under this chapter, unless the context clearly indicates otherwise.

5. Taxpayer's CNI tax returns for tax years 1977 through 1981 on Line 1 entitled "taxable income" indicate that the following figures were reported as taxable income before deductions of tax preference items pursuant to 61 Pa.Code § 153.11:

whether "taxable income", as used in the regulation, may reflect either a profit or a loss.

Aside from making the regulation meaningless because there would be no need for the adjustment if taxable income reflected both profits and losses, Taxpayer's interpretation of the regulation would allow it to carry over its losses from 1977–1981 and apply them towards its 1982 income for deduction purposes. For us to adopt such an interpretation, however, would be in direct contravention with Section 401 of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7401(3)(1)(m), which provides that losses which are not taxed in prior years may not be carried over for any future benefit.[6]

■ Although Taxpayer further argues that the regulation does not require that a tax detriment exist in previous years, a tax detriment implies that there was taxable income upon which taxes were levied which would have been shielded by accelerated depreciation. Because the Board points out that Taxpayer's CNI tax for tax years 1977–1981 was settled at zero and no tax was paid by Taxpayer, we find that Taxpayer did not have taxable income for tax years 1977–1981 and did not suffer any tax detriment. Consequently, Taxpayer failed to meet the requirements of 61 Pa.Code § 153.14(4) for that reason.

■ Taxpayer also contends that if it is denied the right to take the Special Deduction, it will be denied the right to straight line depreciation, available to all other taxpayers, in

| Tax year 1977 | $ −823,051.67 |
| Tax year 1978 | $ −678,502.08 |
| Tax year 1979 | $ −705,857.35 |
| Tax year 1980 | $ −766,422.25 |
| Tax year 1981 | $ −349,208.90 |

6. 72 P.S. § 7401(3)(1)(m) provides that no deduction shall be allowed for the amount of the net operating loss deduction taken under section 172 of the Internal Revenue Code. Section 172 of the Internal Revenue Code provides that there shall be allowed as a deduction for the taxable year an amount equal to the aggregate of (1) the net operating loss carryovers to such year, plus (2) the net operating loss carrybacks to such year.

violation of the Uniformity Clause of the Pennsylvania Constitution. Taxpayer further argues that the inclusion of federal tax preference items relative to accelerated depreciation in its taxable income has the practical effect of disallowing the taxpayer the tax benefits of deductions for those items in arriving at the CNI tax. In support of its argument, Taxpayer cites *Commonwealth v. Molycorp, Inc.,* 481 Pa. 208, 392 A.2d 321 (1978), for the proposition that when a tax act provides two methods for computing tax payments, the Commonwealth is not permitted to discriminate against taxpayers choosing the second method by assessing an additional tax against them for underpayment of taxes while allowing taxpayers using the other method to escape additional tax.

In *Molycorp,* our Supreme Court found that the Commonwealth was systematically discriminating against taxpayers who calculated their tentative tax for state taxes under Method II of the Tentative Tax Act,[7] but not under Method I, by assessing and collecting additional tax only from those who underpaid their tentative tax based on Method II.[8] The extra tax acted as a penalty for taxpayers' underpayment when utilizing Method II. Our Supreme Court held that to impose the penalty on a taxpayer whose underpayment resulted from use of one method was not uniform because the class was made up of those who underpaid, foreclosing discriminatory treatment based on the method utilized.

Taxpayer must recognize that as soon as it chooses accelerated depreciation, it no longer is similarly situated to those taxpayers utilizing straight line depreciation (and viceversa). Unlike in *Molycorp,* the disallowance of the special deduction is not a penalty on those taxpayers who wish to

7. *Formerly,* 72 P.S. § 3385, repealed by the Act of December 21, 1977, P.L. 330.

8. The Tentative Tax Act provides corporate taxpayers a choice of the following two methods for calculating tentative tax:
   Method I—Application of the current tax rate to 90% of the "tax base" for the preceding calendar or fiscal year.
   Method II—Application of the current tax rate to 90% of the "taxable income" of the first three months of the current calendar or fiscal year, annualized.

use accelerated depreciation, because it merely modifies how the accelerated depreciation as determined for federal taxes would apply to state taxes. Because a taxpayer is required to utilize the same method of depreciation on both its Federal tax return and its Pennsylvania CNI tax return, a taxpayer has to consider all of the federal and state tax ramifications before choosing one method of depreciation over another. Simply because the federal tax scheme provides a tax benefit to a taxpayer who utilizes the accelerated method, Pennsylvania is not required to give Taxpayer the same benefit.

In this case, Taxpayer, of its own volition, chose to utilize accelerated depreciation on its Federal tax return, and was forced to utilize the same for purposes of the CNI tax.[9] Further, Taxpayer was aware of the ramifications of choosing accelerated depreciation. Consequently, we find that Taxpayer has not been denied the right to straight line depreciation in violation of the Uniformity Clause of the Pennsylvania Constitution because it would have used that method if it so desired.

Accordingly, having found that the regulation was applied correctly and constitutionally to Taxpayer, we find that the CNI tax and interest assessed by the Board is correct.

## ORDER

AND NOW, this 29th day of April, 1992, the order of the Board of Finance and Revenue, Docket No. C–14,086, dated November 22, 1985, is affirmed and judgment entered for the Commonwealth and against Roosevelt Arms, Inc. in the amount of $13,101, together with interest in the amount of $3,637 and costs according to law and subject to credit for

9. The Commonwealth allows the taxpayer to increase its depreciation deduction under those circumstances where the taxpayer has income to be apportioned in the current tax year. However, the taxpayer must *also* have income to be apportioned in previous years. As we have already determined, Taxpayer did not have taxable income in tax years 1977–1981.

the amount of charge heretofore paid unless exceptions be filed hereto within thirty days.